# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GARRY GENE T.,[1] | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION |
| | ) No. 19-2219-JWL |
| ANDREW M. SAUL,[2] | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) failure to discuss additional evidence purportedly admitted at the ALJ hearing, the court ORDERS that the decision below shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

U.S.C. § 405(g) REMANDING the Commissioner's final decision for further proceedings consistent with this decision.

## I.     Background

Plaintiff filed applications for DIB and SSI on March 13, 2015. (R. 28, 179-96). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims a multitude of errors in the decision at issue. He claims the ALJ failed to include evidence Plaintiff provided to the ALJ at the hearing, erred in finding his mental impairment not severe, erroneously concluded his combination of impairments do not meet or medically equal the severity of an unnamed Listed Impairment, erred in "supplanting" record evidence with his own medical judgment, erroneously discounted the third party lay opinion of Mr. Foley, failed to develop a record sufficient to determine disability, erred "in determining that plaintiff had the RFC [(residual functional capacity)] to perform heavy work[3] with some exertional limitations" (Pl. Br. 24), erred in discounting Plaintiff's allegations of symptoms, and erred in his step five finding.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be

---

[3] The court notes the ALJ assessed an RFC for a range of medium work (R. 34) and found Plaintiff can perform a range of medium work represented by three medium exertion level occupations. (R. 38).

conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

3

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the

burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

**II.     Discussion**

The court finds little merit in much of Plaintiff's argument and much of it appears to be merely a request for the court to reweigh the evidence, accept Plaintiff's subjective allegations made both at the hearing and in the medical records, and substitute its judgment thereof for that of the Commissioner. Moreover, in many instances Plaintiff's citation to the medical records is a misrepresentation of what the records say. As one egregious example, Plaintiff's Brief states, "The VA hospital found that, due to vertigo and dizzy spells, plaintiff was such a fall risk that he was required to move only in a wheelchair and was prescribed a cane or a device for walking assistance to help him ambulate around his home." (Pl. Br. 20) (citing R. 1237). The record cited by Plaintiff is part of a "SCREENING FOR FALL RISK" contained in treatment records from a visit to the Veteran's Affairs emergency room on June 15, 2014. (R. 1235-38). Plaintiff arrived at the ER at 11:15 a.m. complaining of vertigo and nausea, id. at 1235, and departed at 2:00 p.m. in an improved condition. Id. at 1238. While there, Plaintiff was given a "Morse Fall Assessment" revealing the following:

> History of Falling: 0 - No history of falling
> Has the patient fallen within the last 12 months?
> No
> Secondary Diagnosis: 15 - Yes, more than one diagnosis
> Ambulatory Aid: 0 - None, bed rest nurse assist

5

      Intravenous Therapy: 0 – No

      Patient's Gait:  0 - Normal, bed rest, immobile

      Mental Status:  0 - Oriented to own ability

      Total Score: 15

      Score 0-24 - No intervention indicated

(R. 1236-37).  Counsel's assertion that Plaintiff "was such a fall risk that he was required to move only in a wheelchair and was prescribed a cane or a device for walking assistance to help him ambulate around his home," is not supported, but is directly contradicted by the medical record cited.  Nevertheless, because the court finds the ALJ erred in completing the record, remand is necessary, and the court need not evaluate the rest of the errors alleged by Plaintiff.

      Plaintiff claims the record is incomplete, among other reasons, because Plaintiff "provided the ALJ with a note from his doctor and a list of medications" at the hearing but the ALJ did not include them in the record.  (Pl. Brief 8).  The Commissioner argues Plaintiff fails to show the ALJ should have further developed the record and "the hearing transcript demonstrates that Plaintiff did not submit a note from his doctor."  (Comm'r Br. 6).  The Commissioner points to Plaintiff's question at the hearing if the ALJ had the letter from his doctor he gave his "attorney the last time I was here in June, when the lights went out."  Id. (quoting R. 48).  He points out that the record provides no indication of a prior hearing in June which explains why such a letter is not in the record and why a remand is not necessary to secure the letter.  Id. at 6-7.  In his Reply Brief Plaintiff explained that at the hearing he "provided a letter to the hearing clerk.  This letter was from Dr. Greer, a physician who had recently seen Plaintiff and wanted to provide

additional information to the ALJ. This record, though accepted by the ALJ over the video conference, was not included in the record." (Reply 7).

As the parties suggest, the hearing transcript reveals some discussion of additional evidence presented at the hearing. After listing the evidence in the record at the time of the hearing, the ALJ asked Plaintiff if he had a problem with the ALJ using those exhibits. (R. 48). This discussion ensued:

> CLMT: Well, I haven't gone over all of them. Have you got the letter from Dr. Greer that I gave my attorney the last time I was here in June, when the lights went out?
>
> ALJ: Okay.
>
> CLMT: Where is that? Do you have a copy?
>
> ALJ: Is that from the VA?
>
> CLMT: Yes, sir, it's from a Dr. Greer at the St. Joseph Clinic, here in St. Joe, the VA clinic of St. Joe.
>
> ALJ: Yeah. Yeah, we do have the records from the VA hospital at the Exhibit 9F.
>
> CLMT: No, this was from the clinic.
>
> HA: 9F here.
>
> ALJ: We can go over the evidence in a bit, okay? So did you bring any additional evidence with you?
>
> CLMT: Well, I don't know if you need it. I've got a med list that -- I was at the VA in Leavenworth Monday for my breathing problems, and I've got a new medication list for you. They changed a couple things, because my breathing's getting worse. And I didn't know if you had a copy of this or not. I've got a partial disability from the VA for tinnitus.
>
> ALJ: Just give it to the lady, and she's going to copy it and give you a copy back.

>CLMT: Okay. Here you go.
>
>HA: I'll give it back.
>
>CLMT: All right.
>
>ALJ: Okay. These evidence [sic] are admitted into the record.

(R. 48-49). Later, the ALJ asked Plaintiff if he desired to proceed with the hearing without representation, and in discussing his decision, Plaintiff noted he was prepared in the sense he had provided all the evidence. "I've turned in just everything. I think there's enough with the letter -- especially with the letter from Dr. Greer. He specifically stated that he didn't think I was qualified -- I was able to do the work I'm qualified to do." Id. at 53. Shortly thereafter, the ALJ asked Plaintiff about any potential VA disability:

>Q All right. That's good enough, sir. Now, at the VA, are you getting the VA -- disability from the VA?
>
>A For tinnitus, yes, sir, 10% disability --
>
>Q 10%.
>
>A -- for the --
>
>Q 10% disability.
>
>A That's this here. It's been --
>
>Q Okay. Give that to Ms. Harrington. She'll copy that for me.

Id. at 55.

What is clear from the transcript of the hearing is that Plaintiff intended and was instructed to provide at least two items of evidence to the hearing assistant. It is also clear the ALJ approved the submission of that evidence into the record. What is not clear from the transcript is what evidence was in fact submitted at the hearing. Plaintiff

contends one piece of evidence submitted was a letter from Dr. Greer, Plaintiff's treating physician, and the Commissioner contends the letter from Dr. Greer must have been submitted in June 2017 by Plaintiff's attorney at a hearing before some unnamed and unknown agency, but not at the ALJ hearing in this case in November 2017 where Plaintiff appeared unrepresented.

The court has searched the record in this case extensively in an attempt to ascertain the evidence which was at issue to be presented to the hearing assistant at the hearing but has been unable to definitively decide the issue. In that search the court has found only three exhibits in the record now which were not identified at the hearing as being in the record at that time—exhibits 11B, 12B, and 20E—and those exhibits are not the evidence at issue here. Moreover, the ALJ recognized that written evidence was submitted "less than five business days before the scheduled hearing date," found the regulatory requirements for such evidence were satisfied, "and admit[ted] this evidence into the record." (R. 28). Finally, the ALJ's decision at issue here does not mention or specifically address the medication list or Dr. Greer's letter allegedly submitted at the hearing and does not suggest that the ALJ saw the evidence submitted and determined that it was already contained elsewhere in the record or that it was unnecessary to the determination at issue.

Therefore, the court is simply unable to determine whether the evidence was in fact submitted, what that evidence stated, if the ALJ considered the evidence, and whether that evidence compels a different decision than that made by the ALJ. Therefore, remand is necessary for these questions to be answered, and if Dr. Greer's

letter was available at that time, for it to be considered; and if it was not available at that time, for the Commissioner to decide in the first instance whether such a letter should be sought.

In a final consideration, the court notes that Plaintiff has asked that this case be remanded for an immediate award of benefits. (Pl. Br. 29-30). As Plaintiff suggests, whether to remand the case for additional fact-finding or for an immediate calculation and award of benefits is within the discretion of the district court. Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993); Taylor v. Callahan, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir. 1987)). The decision to direct an award should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits. Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986). As the court's discussion above demonstrates, that is not the case here. Remand is necessary in this case for the record to be fully developed.

**IT IS THEREFORE ORDERED** that the decision below shall be REVERSED and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING that decision for further proceedings consistent herewith.

Dated April 13, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**